# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GORDON CLARK, | ) | 3:24-cv-348 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE HANOVER INSURANCE GROUP, | ) | |
| INC., *et al.* | ) | |
| *Defendants*. | ) | July 22, 2025 |

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiff Gordon Clark, proceeding *pro se*, has sued Defendant Olga L. Orengo and her auto insurance carrier, The Hanover Insurance Group, Inc. ("Hanover"), related to a motor vehicle collision between Plaintiff and Orengo. According to Plaintiff, even though Orengo was at fault for the accident, Hanover has refused to accept liability.

Plaintiff has brought eight claims against both Defendants and a ninth claim against Hanover for alleged violations of Plaintiff's rights under federal and state law. Am. Compl., ECF No. 82. Defendants have both moved to dismiss Plaintiff's amended complaint in full for failure to state a claim. Orengo Mot. Dismiss, ECF No. 83 at 1; Hanover Mot. Dismiss, ECF No. 87 at 1. For the reasons described below, Orengo's motion to dismiss is GRANTED in part and DENIED in part, and Hanover's motion to dismiss is GRANTED in full.

## I. FACTUAL BACKGROUND

The Court accepts the following allegations in Plaintiff's amended complaint as true for purposes of deciding Defendants' motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On the evening of July 22, 2023, Plaintiff stopped at a red light in the righthand lane of a double left-turn lane that led to an entrance to Interstate 91 North. ECF No. 82 at 3. He waited at the white stop line for the light to turn green. *Id.* Orengo stopped at the same red light in the lane to the left of Plaintiff. *Id.* Although no vehicle was in front of her, Orengo stopped her vehicle about a full car length or more behind the stop line. *Id.* When the light turned green, Plaintiff began to turn left to enter the highway onramp, during which he stayed in his lane[1] at all times. *Id.* Just as he entered the highway onramp, Plaintiff's vehicle was "T-boned" by Orengo's vehicle, causing Plaintiff's neck to "snap" from side to side. *Id.* Plaintiff immediately pulled over and called 911 to report the incident and request police assistance. *Id.* at 3–4. Orengo then apologized to Plaintiff for colliding into his vehicle and asked Plaintiff if he wanted to exchange insurance information without reporting the accident to the police. *Id.* at 4. Plaintiff informed Orengo that the police were already on their way and asked Orengo if she had auto insurance. *Id.* The question appeared to offend her. *Id.*

State Police Officer Christopher J. Genovese arrived within approximately fifteen minutes of Plaintiff reporting the incident, and interviewed Plaintiff and Orengo. *Id.* In the Accident Information Summary, Officer Genovese reported that Orengo "was found to be at fault and issued a written warning for violation of CGS 14-236 Failure to Maintain Proper Lane." *Id.* (quoting *id.* at 23–24).

Following the accident, Plaintiff reached out to Olender's Auto Body to obtain an estimate on the damage to his vehicle because he was informed that Olender's was one of Hanover's

---

[1] Plaintiff alleges that he was stopped in the righthand lane of the double left-turn lane but later alleges that he stayed in his lefthand lane while turning left. ECF No. 82 at 3. The Court assumes that this was a typographical mistake, as the police incident report indicated that Plaintiff was in the righthand lane. Accident Information Summary, ECF No. 82 at 23.

approved vendors.[2]  *Id.* at 5.  Olender's later informed Plaintiff that Hanover was not accepting liability for the damage and did not authorize an estimate for the repair.  *Id.*  Olender's told Plaintiff that it believes Hanover was acting in bad faith because Hanover did not want pictures of the damage, which Olender's stated was unusual.  *Id.*

As a result of the accident, Plaintiff began experiencing pain on the left side of his neck, which eventually traveled to his entire neck, head, shoulders, and throughout his entire back.  *Id.* at 4.  Plaintiff did not have health insurance at the time of the incident, and does not presently have insurance.  *Id.*  On August 2, 2023, a primary care physician examined Plaintiff and opined that a muscle issue, rather than a skeletal issue, was causing Plaintiff's neck, head, shoulder, and back pain.  *Id.* at 5–6.  Due to the lack of improvement in pain, Plaintiff scheduled an appointment with a chiropractor for October 12, 2023, although he was not able to begin seeing the chiropractor until November 7, 2023, because his vehicle had a "major mechanical/electrical car problem" that he attributes to the accident.  *Id.* at 6.  The chiropractor determined that the impact of the collision caused Plaintiff's neck to snap in an "unnatural manner" and the shoulder strap of the seatbelt to "grab[] Mr. Clark's left shoulder on impact," which resulted in trauma to the left side of his neck and left shoulder.  *Id.* at 7.  Plaintiff alleges that he has suffered months of "varying pain and suffering, from mild to excruciating, that has caused countless hours of pain and suffering, and limitations on [his] work and employment options and daily activities, as well as many hours of lost sleep."  *Id.* at 6.  He alleges that the pain continues to impair and limit his ability to work and participate in daily activities, and believes that the pain may be permanent and lifelong.  *Id.* at 7.

On February 2, 2024, Plaintiff's auto insurer, Amica Mutual Insurance Company ("Amica"), notified Plaintiff that Hanover had filed a claim with Amica against Plaintiff, claiming

---

[2] Although Plaintiff does not allege that Hanover was Orengo's insurance carrier, the Court interprets the amended complaint liberally because Plaintiff is proceeding *pro se*, and draws this reasonable inference.

that Plaintiff's vehicle had sideswiped Orengo's vehicle. *Id.* Plaintiff initiated the present action on March 13, 2024. *See* Compl., ECF No. 1.

In his amended complaint, Plaintiff brings the following eight claims against both Defendants: (1) "personal injury and property damage" (Count One); (2) Section 1983 negligence (Count Two); (3) "intentional infliction of physical, mental, and emotional distress, pain, and suffering" (Count Three); (4) "negligent infliction of physical, mental, and emotional distress, pain, and suffering" (Count Four); (5) insurance fraud (Count Five); (6) "assumption of duty" (Count Six); (7) breach of the implied covenant of good faith and fair dealing (Count Seven); and (8) Section 1983 malice claim (Count Eight). ECF No. 82 at 8–15. Additionally, Plaintiff brings one claim against Hanover only: violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (Count Nine). *Id.* at 16. Plaintiff seeks injunctive relief in the form of a "full, complete, and third-party independent investigation" into Hanover's business practices, which allegedly violate federal insurance law and CUTPA; $4.4 million in compensatory damages and $21.6 million in punitive damages; and attorney's fees, non-taxable expenses, and costs. *Id.* at 16–17.

Defendants move to dismiss the amended complaint in its entirety. ECF Nos. 83, 87. Plaintiff opposes the motions. Pl.'s Opp'n Br., ECF No. 100. After the Court discovered that Defendants had not served Plaintiff with the Local Rule 12(a) Notice to Self-Represented Litigants Regarding Motions to Dismiss, the Court required Defendants to do so, and offered Plaintiff an opportunity to amend his opposition brief, which he did. Pl.'s Am. Opp'n Br., ECF No. 158.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When

determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that Courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic

pleading standards outlined above to survive a motion to dismiss.  *Id.* (citing *Twombly*, 550 U.S. at 570).

## III.    DISCUSSION

For the reasons described below, the Court GRANTS Hanover's motion to dismiss in full, and GRANTS in part and DENIES in part Orengo's motion to dismiss.

### A.    Count One:  Personal Injury and Property Damage

Count One alleges that "Defendants breached their lawful duty to not personally injure nor [sic] damage their fellow man's/woman's body and/or property" by causing "irreparable damage and injuries."  ECF No. 82 at 8.  A claim for "personal injury and property damage" is not a legally cognizable tort claim, and Plaintiff fails to cite to any authority that it exists under federal or Connecticut law.  Because it would be futile for Plaintiff to attempt to amend a claim that does not exist, the Court finds that Count One must be dismissed without leave to replead as to both Defendants.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (clarifying that where the problem with a cause of action is "substantive" and "better pleading will not cure it," repleading would be futile, and leave to amend is properly denied).  In any case, the Court takes up the issue of injury below in its analyses of the legally cognizable tort claims brought by Plaintiff.

### B.    Count Two:  Negligence

Next, the Court dismisses the negligence and negligence *per se* claims against Hanover, but finds that Plaintiff has stated claims for negligence and negligence *per se* against Orengo. Given that Plaintiff concedes that Count Two should be analyzed under "common law and/or state law," rather than as a federal claim brought pursuant to 42 U.S.C. § 1983, *see* Pl.'s Opp'n Br. at 6; Pl.'s Am. Opp'n Br. at 7, the Court does not reach the question of whether the negligence and negligence *per se* claims may be brought as § 1983 causes of action against Defendants.

As a preliminary matter, Plaintiff appears to add a claim based on negligence *per se* in his opposition to the motions to dismiss.  Pl.'s Opp'n Br. at 5–6; Pl.'s Am. Opp'n Br. at 6–7.  Count Two alleges that both Defendants were negligent by "breach[ing] their lawful duty to act with reasonable care towards their fellow man/woman," ECF No. 82 at 8–9, which is best characterized as a common law negligence claim.  There is no mention of negligence *per se* in the amended complaint.  Nevertheless, although "[a] *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers," the Court will consider this new claim alongside the original negligence claim because the negligence *per se* claim is asserted based on the facts alleged in the amended complaint.  *See Davila v. Lang*, 343 F. Supp. 3d 254, 267–68 (S.D.N.Y. 2018) (collecting cases).

### 1.  Common Law Negligence

The elements of a negligence cause of action "are well established:  duty; breach of that duty; causation; and actual injury."  *McDermott v. State*, 316 Conn. 601, 609 (2015) (citation and internal quotation marks omitted).  Plaintiff "must meet all of the essential elements of the tort in order to prevail."  *LaFlamme v. Dallessio*, 261 Conn. 247, 251 (2002); *see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020) ("[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." (citations omitted)).  Relevant here, duty "is a legal conclusion about relationships between individuals, made after the fact, and is imperative to a negligence cause of action."  *McDermott*, 316 Conn. at 609 (cleaned up).  "Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier of fact consider whether that duty was breached."  *Ruiz v. Victory Props., LLC*, 315 Conn. 320, 328 (2015).

The existence of a duty is determined by considering "whether the specific harm alleged by the plaintiff was foreseeable to the defendant," or, in other words, "whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result." *Id.* (citation and internal quotation marks omitted). If a court determines that the harm was foreseeable, the "final step in the duty inquiry" considers whether the defendant's duty should, as a matter of public policy, extend to the harm suffered. *Jaworski v. Kiernan*, 241 Conn. 399, 408 (1997); *see also Murillo v. Seymour Ambulance Ass'n, Inc.*, 264 Conn. 474, 479 (2003).

To determine whether the harm alleged was foreseeable to Defendants, the Court first identifies the specific harm Plaintiff alleges to have suffered: neck and shoulder injuries that cause pain to his neck, head, shoulders, and back; "a major mechanical/electrical" problem in his vehicle; potentially permanent and lifelong pain from the neck and shoulder injuries; loss of sleep; limitations on his work and employment options and his ability to participate in daily activities; mental injuries and emotional distress; and money damages in excess of $75,000. *See* ECF No. 82 at 4, 6–7, 9.

Beginning with Hanover, Plaintiff does not articulate *how* Hanover in any way caused the alleged injuries. Plaintiff's arguments as to negligence focus solely on the collision between Orengo and Plaintiff. Pl.'s Opp'n Br. at 5–6; Pl.'s Am. Opp'n Br. at 6–7, 24–25. Hanover was not a party to the car accident and the amended complaint does not allege that Hanover acted negligently in any manner to cause the collision to occur.

Even if the negligence cause of action against Hanover were based on its alleged denial of liability coverage for the accident, it must still fail. "[A]bsent a direct contractual relationship between the [injured] party bringing the action and the insurance company [of the alleged

tortfeasor], or a third-party beneficiary relationship, an injured party is precluded from bringing a direct action for negligence against the insurer until judgment is obtained against the tortfeasor." *Alexander v. W.F. Shuck Petrol. Co.*, No. HHB-CV-085010050, 2009 WL 2783587, at *2 (Conn. Super. Ct. Aug. 3, 2009). Here, it is undisputed that Plaintiff has no direct contractual relationship with Hanover.

Nor does Plaintiff argue that he is an intended third-party beneficiary of Orengo's contract with Hanover. "The mere fact that the third party will receive a benefit if the insurer fulfills its contractual obligations to the insured does not make the third-party claimant a third-party beneficiary." *Cholewa v. Hill*, No. CV-156025338, 2017 WL 5642283, at *5 (Conn. Super. Ct. Oct. 25, 2017). Furthermore, an insurer "has no duty to settle an insurance claim with a third-party claimant fairly." *Banatoski v. Sheridan*, No. CV 97-0483809-S, 1998 WL 764493, at *4 (Conn. Super. Ct. Sept. 17, 1998) (holding that because the insurer did not owe the third-party claimant a duty to settle her claim fairly, it cannot be liable to the third-party claimant for a negligence-related cause of action); *see also O'Connor v. QBE Ins. Corp.*, No. CV-126032396, 2018 WL 4838937, at *6 (Conn. Super. Ct. Sept. 19, 2018) (recognizing that "there are cases holding that a third-party claimant to the proceeds of a liability insurance policy (i.e., a party injured by the acts of one insured under the policy), as a nonparty to the insurance contract, is not owed any duty by the insurer that would support an action in negligence"). Plaintiff's bare assertion that Hanover violated its duty "to act with ordinary care and prudence," ECF No. 82 at 9, without more, fails to establish that any duty is owed to him. *See Elliot v. Devolinger*, No. CV-040412246, 2004 WL 2222647, at *2 (Conn. Super. Ct. Aug. 3, 2004) (striking third-party claimant's negligence claim against the insurer because he failed to allege that the insurer owed any duty to him, and merely

labeling his claim as a negligence claim does not make it so).  Accordingly, Plaintiff's negligence claim against Hanover is dismissed, but with leave to amend.

As to Orengo, however, the Court holds that Plaintiff has plausibly stated a negligence claim.  The Court first finds that Orengo was under a duty to exercise reasonable care by virtue of operating a motor vehicle on the road.  Connecticut "case law is clear that 'a driver is entitled to assume that other users of the highway will obey the law, including lawful traffic regulations, and observe reasonable care, until he knows or in the exercise of reasonable care should have known that the assumption has become unwarranted.'"  *Sic v. Nunan*, 307 Conn. 399, 408 (2012) (quoting *Gross v. Bos., Worcester & N.Y. St. Ry. Co.*, 117 Conn. 589, 596 (1933)).  And by alleging that Orengo collided into Plaintiff's vehicle while they were both turning left, that Orengo apologized to Plaintiff following the collision, and that Officer Genovese issued Orengo a written warning for "[f]ailure to [m]aintain [p]roper [l]ane," ECF No. 82 at 4, the amended complaint sufficiently pleads that Orengo breached her duty of care.  *See* Pl.'s Am. Opp'n Br. at 24–25.

Furthermore, Plaintiff has plausibly alleged facts establishing causation and injury.  It is well established that the plaintiff must prove both causation in fact and proximate cause to demonstrate that the defendant's conduct legally caused the plaintiff's injuries.  *Winn v. Posades*, 281 Conn. 50, 56–57, 59 (2007).  Causation in fact evaluates whether the injury would not have occurred but for the defendant's conduct.  *Rawls v. Progressive N. Ins. Co.*, 310 Conn. 768, 776 (2014) (citing *Winn*, 281 Conn. at 56).  "Proximate cause requires that the defendant's conduct was a substantial factor in bringing about the plaintiff's injuries and that there was an unbroken sequence of events that tied the plaintiff's injuries to the defendant's conduct."  *Id.* at 776–77 (cleaned up; quoting *Winn*, 281 Conn. at 56).  Despite Orengo's assertion that "[i]t is unclear how and to what extent" Plaintiff claims Orengo was negligent, Orengo Opening Br., ECF No. 84 at 3,

the amended complaint alleges that Orengo merged out of the lane in which she was driving and T-boned Plaintiff's vehicle, causing Plaintiff's neck to snap "in an unnatural manner" and the shoulder strap of his seatbelt to "grab[]" his left shoulder on impact, which led to the neck and shoulder injuries that have been causing him pain ever since.  ECF No. 82 at 3–7.  Drawing all reasonable inferences in Plaintiff's favor, as the Court must on a motion to dismiss, the Court finds that Plaintiff has sufficiently demonstrated that his physical injuries and resulting loss of sleep and limitations would not have occurred but for the collision and that Orengo's failure to maintain her vehicle in her lane was a substantial factor in causing Plaintiff's injuries.

For these reasons, Plaintiff has stated a plausible negligence claim against Orengo.

### 2.  Negligence Per Se

Negligence *per se* effectively engrafts a particular statutory standard onto the standard of care imposed by the duty element of a negligence cause of action.  *Gore v. People's Sav. Bank*, 235 Conn. 360, 376 (1995); *accord Telkamp v. Vitas Healthcare Corp. Atl.*, No. 3:15-CV-726 (JCH), 2016 WL 777906, at *10 (D. Conn. Feb. 29, 2016).  To establish negligence *per se*, a plaintiff need not prove that the defendant failed to act "as an ordinarily prudent person would have acted under the circumstances"; instead, the jury needs only "decide whether the relevant statute or regulation has been violated.  If it has, the defendant was negligent as a matter of law." *Gore*, 235 Conn. at 376.  Negligence *per se* is appropriate where (1) the plaintiff was "within the class of persons intended to be protected by" the relevant statute, and (2) the injury suffered "is the type that the statute was intended to prevent."  *Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc.*, 182 Conn. App. 55, 66 (2018).  But "[b]efore that negligence could support liability, however, a causal connection between the negligence and the injury must be established,

and the injury must be of the type which the statute was intended to prevent." *Toomey v. Danaher*, 161 Conn. 204, 212 (1971) (citations omitted).

In Connecticut, "the violation of a statute or regulation that establishes a standard of conduct for the operation of motor vehicles is generally negligence *per se*." *Cornelio v. Covenant Transp., Inc.*, No. 3:02-CV-2279 (JCH), 2006 WL 236856, at *3 (D. Conn. Jan. 31, 2006); *see also Gore*, 235 Conn. at 378 ("The majority of cases concluding that a statutory provision implicates the doctrine of negligence *per se* have arisen in the context of motor vehicle regulation."). Here, Plaintiff bases his negligence *per se* claim on Orengo's violation of Conn. Gen. Stat. § 14-236, which provides that a vehicle "shall not be moved from such lane until the driver has ascertained that such movement can be made with safety." Under Connecticut law, an alleged tortfeasor who is found to have violated § 14-236 is negligent as a matter of law. *See O'Donnell v. Feneque*, 120 Conn. App. 167, 173 (2010); *Toomey*, 161 Conn. at 212 ("A violation of [§ 14-236 and other motor vehicle statutes] would constitute negligence."); *Cornelio*, 2006 WL 236856, at *3.[3]

The Court first dismisses Plaintiff's negligence *per se* claim against Hanover. Because Hanover was not the operator of the motor vehicle that collided with Plaintiff's car, it could not have violated § 14-236. Indeed, Hanover was not involved in the accident at all. Thus, to the

---

[3] In his amended opposition brief, Plaintiff requests that the Court "consider" various other Connecticut motor vehicle statutes, including those for reckless driving, operating while under the influence of liquor or drugs, overtaking and passing in no-passing zones, double or treble damages for personal injury or property damage resulting from certain traffic violations, and using mobile devices while driving, "and/or allow Mr. Clark to file an Amended Complaint to add the following legal citations." Pl.'s Am. Opp'n Br. at 28. The Court cannot consider these new legal provisions for purposes of the instant motions to dismiss, as they were not mentioned in the amended complaint. Nor are there any facts alleged in the amended complaint to suggest that, for instance, Orengo was driving while under the influence of drugs or alcohol or using a mobile device while driving. Should Plaintiff wish to elaborate on his negligence *per se* claim against Orengo in any Second Amended Complaint, he is free to reference those new statutes, to the extent they are supported by the factual record.

extent Plaintiff brings a negligence *per se* claim against Hanover, it is dismissed without leave to amend.

Turning to the claim against Orengo, the Court finds that Plaintiff has alleged sufficient facts to support a negligence *per se* claim.  By alleging that Officer Genovese concluded that Orengo had violated § 14-236 and was at fault for causing the collision, ECF No. 82 at 4, Plaintiff has plausibly demonstrated that Orengo was statutorily negligent.  Plaintiff, as a fellow driver on the road, falls within the class of persons that § 14-236 is designed to protect.  And for the reasons articulated above, the amended complaint sufficiently demonstrates that Plaintiff's injuries would not have occurred but for the collision, which was caused by Orengo's failure to keep her vehicle in the proper lane.

In sum, the Court grants Hanover's motion to dismiss as to the negligence and negligence *per se* claims, with leave to amend as to negligence and without leave to amend as to negligence *per se*.  The negligence and negligence *per se* claims against Orengo may proceed.

C.  Count Three:  Intentional Infliction of Emotional Distress

Next, the Court dismisses Plaintiff's claim for intentional infliction of emotional distress ("IIED") against both Defendants.

To state a claim for IIED, a plaintiff must plausibly allege:  "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  *Strano v. Azzinaro*, 188 Conn. App. 183, 187 (2019).

In Connecticut, plaintiffs are held to a "stringent standard" for demonstrating that a defendant's conduct was "extreme and outrageous."  *Apatow v. Town of Stratford*, 651 F. Supp. 3d 573, 591 (D. Conn. 2023).  To rise to the level of extreme and outrageous, a defendant's conduct

must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003).  Liability for IIED requires conduct "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 267 (1991) (quoting *Petyan v. Ellis*, 200 Conn. 243, 254 n.5 (1986)).  "It is the intent to cause injury that is the gravamen of the tort." *Id.* (cleaned up; quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 53 (1988)).

  The Court finds that the IIED claim against Hanover is insufficiently alleged and must be dismissed.  The amended complaint merely alleges that Hanover denied liability for the accident and filed an insurance claim against Plaintiff, and that Hanover's conduct caused Plaintiff to suffer "physical, mental, and emotional distress, pain, and suffering."  ECF No. 82 at 5, 7, 10.  An insurer's failure to "conduct a thorough or reasoned investigation" and hasty determination that the claimant was at fault are "not so atrocious as to trigger liability for *intentional* infliction of emotional distress."  *Carrol*, 262 Conn. at 444.  And although Plaintiff alleges that Hanover "stymie[d] his ability to seek medical care" and "threaten[ed] him with further economic harm," Pl.'s Am. Opp'n Br. at 27, Plaintiff alleges nothing to suggest that Hanover had known or should have known that Plaintiff did not have health insurance at the time, or that Hanover actually did this with the intention of financially harming Plaintiff.  Without more, the amended complaint does not sufficiently allege an IIED claim against Hanover.  *See Farrah v. Allstate Ins. Co.*, No. CV-010342834-S, 2003 WL 22206802, at *2 (Conn. Super. Ct. Sept. 16, 2003) (dismissing third-party claimant's IIED claim against tortfeasor's insurer because it was only alleged that the insurer's "conduct was intentional and caused her 'emotional upset'").

Defendant Orengo's conduct, as alleged in the amended complaint, also does not rise to the level of extreme or outrageous required to sustain an IIED claim. Even reading the allegations in the light most favorable to Plaintiff, there is nothing to suggest that Orengo intentionally collided into Plaintiff's vehicle, and a conclusory allegation that Orengo both intentionally *and* negligently operated her vehicle by changing lanes when it was not safe to do so does not make it plausible that the collision was intentional on Orengo's part or intended to cause Plaintiff extreme emotional distress. Taken as true, the factual allegations demonstrate nothing more than a car *accident*. In addition, the mere act of T-boning Plaintiff's vehicle due to Orengo's failure to change lanes with care is neither an outrageous nor extreme act. While it could be extreme and outrageous for a driver to *intentionally* T-bone another driver, a collision resulting from a mistake—which is all the Court can reasonably infer from Plaintiff's allegations—is not something that would lead an average member of the community to exclaim, "Outrageous!" *Appleton v. Bd. of Educ. of Stonington*, 254 Conn. 205, 211 (2000). Indeed, the Court has been unable to find, nor has Plaintiff cited to, any cases in Connecticut that even analyzed an IIED claim brought against a driver for their involvement in an automobile collision.

In his amended opposition brief, Plaintiff additionally argues that Orengo intentionally inflicted emotional distress by "knowingly filing a falsified insurance claim blaming Plaintiff for the collision." Pl.'s Am. Opp'n Br. at 27. But the amended complaint alleges only that Hanover, without mentioning Orengo, filed the insurance claim against Plaintiff. *See* ECF No. 82 at 7. In addition, Plaintiff alleges no facts that suggest Orengo acted in a manner that was so extreme and outrageous by filing an insurance claim against Plaintiff. Like with Hanover, there is no indication from facts alleged in the amended complaint that Orengo had known or should have known that

Plaintiff did not have health insurance or that Orengo intentionally denied culpability for the collision with the intention of financially harming Plaintiff.

In any event, whether Plaintiff bases his IIED claim against Orengo on the collision itself, the insurance claim filed against him, or both, Plaintiff's allegations of the emotional distress he suffered as a result are too conclusory to state an IIED claim.  Aside from passing references to emotional distress, Plaintiff does not specify the nature or severity of the distress he suffered.  *See Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998) ("Mere conclusory allegations are insufficient as a matter of law to support a cause of action for [IIED].").

For these reasons, the Court grants Hanover and Orengo's motions to dismiss the IIED claim.  As Hanover and Orengo's conduct does not rise to the level of IIED as a matter of law, the Court denies Plaintiff leave to amend this claim.

D.  Count Four:  Negligent Infliction of Emotional Distress

Likewise, the Court dismisses Plaintiff's claim for negligent infliction of emotional distress ("NIED") against both Defendants.

Count Four alleges that "Defendants breached their lawful duty to not intentionally, negligently, incompetently, illegally, and repeatedly inflict physical, mental, and emotional distress, pain, and suffering on another fellow man/woman" and that "Plaintiff suffered serious physical, mental, and emotional distress, pain, and suffering of the type that a reasonable person would expect to occur."  ECF No. 82 at 11.

As a threshold matter, the NIED claim against Hanover and Orengo is duplicative of the negligence claim, and must therefore be dismissed.  *See Washington v. City of Bridgeport*, No. 3:23-CV-01607 (KAD), 2025 WL 562621, at *7 (D. Conn. Feb. 20, 2025) (dismissing negligence claim as duplicative of NIED claim).  "Duplicative claims shall be dismissed when they are based on identical conduct and seek the same relief."  *Sands Harbor Marina Corp. v. Wells Fargo Ins.*

*Servs. of Or., Inc.*, 156 F. Supp. 3d 348, 362 (E.D.N.Y. 2016) (collecting cases). Here, both the NIED claim and negligence claim against Orengo are based on allegations that Orengo unsafely changed her lane and collided into Plaintiff's vehicle, ECF No. 82 at 3–4, resulting in "irreparable damage and injuries, including, but not limited to physical, mental, and emotional distress, pain, and suffering." *Id.* at 9, 11. Likewise, both the NIED claim and negligence claim against Hanover arise out of Hanover's alleged denial of liability for the collision and its subsequent insurance claim against Plaintiff, *id.* at 5, 7, resulting in "irreparable damage and injuries, including, but not limited to physical, mental, and emotional distress, pain, and suffering." *Id.* at 9, 11.

Although Plaintiff's oppositions to the motions to dismiss attempt to differentiate between the two types of claims by arguing that Plaintiff suffered "personal injury and property damage" as to the negligence claim and "negligent infliction of physical, mental, and emotional distress, pain, and suffering" as to the NIED claim, Pl.'s Opp'n Br. at 6, 10; Pl.'s Am. Opp'n Br. at 7, 10, neither the amended complaint nor the opposition briefing elaborate on the nature or severity of the mental and emotional distress suffered. *See* Pl's Opp'n Br. at 9–11; Pl.'s Am. Opp'n Br. at 10–11, 26 (conclusorily alleging that Plaintiff "suffer[ed] emotional distress severe enough to cause illness or bodily harm" and that Defendants' behavior caused "emotional distress, pain, and physical suffering"); ECF No. 82 at 4, 6–7, 9, 11 (describing physical injuries that resulted in loss of sleep and limitations on ability to work and participate in daily activities, but only conclusorily alleging emotional distress). Because there are no factual allegations of emotional distress beyond a conclusory allegation already asserted in the negligence claim, the NIED claim against Hanover and Orengo must be dismissed. *See Washington*, 2025 WL 562621, at *7.

In any event, the amended complaint fails to state a NIED claim against Hanover and Orengo. To state a claim for NIED, a plaintiff must plausibly allege: "(1) the defendant's conduct

created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol*, 262 Conn. at 444. "In [NIED] claims, unlike general negligence claims, the foreseeability of the precise nature of the harm to be anticipated is a prerequisite to recovery even where a breach of duty might otherwise be found." *Perodeau v. City of Hartford*, 259 Conn. 729, 754 (2002) (cleaned up; quoting *Maloney v. Conroy*, 208 Conn. 392, 398 (1988)).

For the reasons already explained, Hanover "has no duty to settle an insurance claim with a third-party claimant fairly." *Banatoski*, 1998 WL 764493, at *4. And because Hanover does not owe that duty to Plaintiff, "it cannot be liable to [P]laintiff for negligent infliction of emotional distress." *Id.*; *see also Decormier v. Grange Mut. Cas. Co.*, No. 525835, 1993 WL 445925, at *1 (Conn. Super. Ct. Oct. 18, 1993) (noting, in a motor vehicle accident case, that "[t]o permit a claim of emotional distress by a party to third party litigation because of the conduct of the opposing party would open the door to a flood of endless unjustifiable litigation").

Even assuming that a third-party claimant may bring a NIED claim against an insurer, though, the claim against Hanover must still be dismissed. "Alleging the denial of an insurance claim, without more, cannot suffice to maintain a negligent infliction of emotional distress claim." *O'Neill v. Riversource Life Ins. Co.*, No. 3:10-CV-898 (JCH), 2010 WL 3925988, at *2 (D. Conn. Sept. 29, 2010) (citation omitted). Here, Plaintiff alleges only that Hanover will not accept liability for the accident, that Hanover did not want pictures of the damage to Plaintiff's vehicle, and that Hanover had filed a claim with Plaintiff's insurer, Amica. *See* ECF No. 82 at 5, 7. The Court agrees with Hanover that these allegations are insufficient to state a NIED claim. There are no other facts that suggest Hanover's conduct would create an *unreasonable* risk of distress, let alone

18

that it would cause distress severe enough to cause illness or bodily harm. *See O'Neill*, 2010 WL 3925988, at *2 n.2 (finding that the plaintiff failed to allege unreasonable risk of causing distress because there was no indication that, for example, the plaintiff was "especially vulnerable and that [the insurer] acted to exacerbate her condition"). While Plaintiff alleges that his emotional distress was exacerbated by his lack of health insurance at the time, there is no suggestion that Hanover had known or should have known this fact. Pl.'s Am. Opp'n Br. at 26–27. The fact that Hanover denied liability and filed an insurance claim against Plaintiff, which caused hardship for Plaintiff, is not enough to support a NIED claim. *See Chima Enter. Inc. v. Chubb Nat'l Ins. Co.*, No. 3:23-CV-1331 (VAB), 2024 WL 4349034, at *13 (D. Conn. Sept. 30, 2024) (dismissing NIED claim against insurer, when defendants simply "constru[ed] the insurance policy differently from what the [p]laintiffs wanted").

As to Orengo, the Court also finds that Plaintiff's NIED claim must be dismissed for failure to state a claim. As articulated above, Plaintiff's allegations with respect to the emotional distress he suffered are too conclusory to state a NIED claim, given that he fails to specify the nature or severity of the distress. In addition, Plaintiff must do more than allege that Orengo breached the duty of care owed to Plaintiff; he must also demonstrate "the foreseeability of the *precise* nature of the harm to be anticipated." *Perodeau*, 259 Conn. at 754 (emphasis added). Simply alleging that Orengo's "unsafe lane change caused the accident and injuries" to Plaintiff "is insufficient as a matter of law" to satisfy the foreseeability requirement. *Stelma v. Comarella*, No. TTD-CV-146007736S, 2014 WL 4637548, at *1 (Conn. Super. Ct. Aug. 14, 2014). Nor is there any indication that it was foreseeable that Plaintiff's emotional distress would be exacerbated by his lack of health insurance. Pl.'s Am. Opp'n Br. at 26–27. Plaintiff alleges no facts suggesting that

Orengo had known or should have known that Plaintiff was uninsured and potentially unable to access affordable healthcare.

Accordingly, Plaintiff's NIED claim against Hanover and Orengo is dismissed, with leave to amend.

E.  Count Five:  Insurance Fraud

The Court next dismisses Plaintiff's insurance fraud cause of action against both Defendants, which alleges, without any specificity as to the relevant statute, that Defendants breached their "lawful duty to not violate the 15 U.S. Code - Chapters 20 and 93 (Regulation of Insurance, and Insurance) against the Plaintiff."  ECF No. 82 at 12.  In the oppositions to the motions to dismiss, Plaintiff does not refer to any statutory authority and instead argues generally that it is unlawful under state and federal common law to commit fraud against another person. *See* Pl.'s Opp'n Br. at 11; Pl.'s Am. Opp'n Br. at 12.

To begin, Plaintiff's insurance fraud claim against Orengo fails to meet the heightened pleading requirements for actions alleging fraud, although the claim against Hanover does abide by the heightened standard.  *See* Fed. R. Civ. P. 9(b).  In order to survive a motion to dismiss, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (citation omitted).  Plaintiff has not alleged any facts to support his claim that Orengo committed insurance fraud.  In fact, aside from conclusory statements that "Defendants" committed insurance fraud, Plaintiff does not name Orengo as an actor in any factual allegation that could reasonably be connected to the alleged insurance fraud.  Instead, Plaintiff alleges only that *Hanover* filed a fraudulent insurance claim with Plaintiff's insurer a short time before February 2, 2024, over six months after the incident, and that *Hanover* fraudulently claimed that Plaintiff's vehicle side-

swiped Orengo's vehicle.  *See* ECF No. 82 at 7; Pl.'s Opp'n Br. at 12; Pl.'s Am. Opp'n Br. at 12–13.  Plaintiff also claims that the insurance claim was fraudulent because he was not at fault for the collision, as demonstrated by Orengo's initial apology and the police report.  ECF No. 82 at 7.  Accepting Plaintiff's allegations as true, the Court finds that the insurance fraud claim against Hanover satisfies the heightened pleading standard for a fraud claim.

Nevertheless, the Court concludes that the insurance fraud claim against Hanover must be dismissed.  First, Plaintiff fails to cite to any authority to support the assertion that federal common law exists for the type of insurance fraud alleged.  It is axiomatic that "there is no federal general common law."  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *City of N.Y. v. Chevron Corp.*, 993 F.3d 81, 89 (2d Cir. 2021) ("[F]ederal common law exists in only the few and restricted enclaves . . . where a federal court is compelled to consider federal questions that cannot be answered from federal statutes alone." (cleaned up; citations omitted)).  Only two categories of issues demand the existence of federal common law: (1) "those in which a federal rule of decision is necessary to protect uniquely federal interests," and (2) "those in which Congress has given the courts the power to develop substantive law."  *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (citations omitted); *see also Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421 (2011).  It is not apparent to the Court that uniquely federal interests are at issue here, nor has the Court been made aware of any federal legislation that provides federal courts with the authority to develop substantive law in the area of fraud committed by an automobile insurer against a third-party claimant.

The insurance fraud claim against Hanover also fails even if it were brought as a state common law fraud claim.  Under Connecticut law, "[t]he essential elements of an action in common law fraud . . . are that:  (1) a false representation was made as a statement of fact; (2) it

was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Sturm v. Harb Dev., LLC*, 298 Conn. 124, 142 (2010) (citation omitted).  In addition, "the party to whom the false representation was made claims to have relied on that representation and to have suffered harm as a result of the reliance."  *Id.*  With respect to Hanover's denial of Plaintiff's insurance claim, Plaintiff has only alleged that Hanover made a false representation, that he was the party to whom the false representation was made, and that he was harmed by the representation. But Plaintiff has not shown that he acted in *reliance* on the false representation.  *See Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Invs., L.P.*, 260 Conn. 766, 777–78 (2002) (where the plaintiff does not act in reliance on the misrepresentation, a fraud claim cannot succeed).  As to Hanover's insurance claim filed with Plaintiff's insurer, that allegedly false representation was not even made to Plaintiff.  *See id.*  As a result, Plaintiff has not alleged facts sufficient to support a claim for common law fraud against Hanover under Connecticut law.  This claim is dismissed with leave to amend.

F.  Counts Six:  Assumption of Duty

Count Six asserts a claim for "assumption of duty," alleging that Defendants "breached their lawful duty to keep and honor their assumed duty."  ECF No. 82 at 13.  Plaintiff elaborates that a person who "applies for a driver's license and/or insurance license . . . contractually accepts an Assumption of Duty" which "is to not intentionally, negligently, and/or fraudulently injure another person and/or damage their property through the use of said license(s)."  Pl.'s Opp'n Br. at 14; Pl.'s Am. Opp'n Br. at 15.  For the reasons described below, Count Six is dismissed without leave to replead.

The issue of assumption of duty is usually part of analyzing whether a duty exists to support a breach of contract claim or a tort claim.  *See, e.g.*, *Demond v. Project Serv., LLC*, 331 Conn. 816,

834–54 (2019) (addressing whether defendants assumed any duties to plaintiffs as part of the analysis of plaintiffs' negligence claim); *Precision Mech. Servs., Inc. v. T.J. Pfund Assocs., Inc.*, 109 Conn. App. 560, 561–71 (2008) (in the context of an agency relationship, considering whether defendants assumed any duties to plaintiffs in order to determine liability for negligence and breach of contract); *McDermott*, 316 Conn. at 612–15 (discussing scope of the duty assumed by defendant in a negligence action); *Grenier v. Comm'r of Transp.*, 306 Conn. 523, 546–52 (2012) (analyzing voluntary assumption of duty in order to determine the duty element of a negligence cause of action); *Coville v. Liberty Mut. Ins. Co.*, 57 Conn. App. 275, 278–84 (2000) (holding that the trial court failed to adequately present a one-count negligence action to the jury because it did not specifically instruct the jury as to gratuitous assumption of duty). To the extent Plaintiff argues that Defendants assumed a duty and breached that duty due to negligence, the Court has already considered that question in its negligence analysis above.

This cause of action fares no better when viewed as a breach of contract claim. Putting aside that Plaintiff has not asserted a breach of contract claim against any Defendant, Plaintiff fails to allege the existence of a contract between him and Hanover or between him and Orengo. A passing remark that Defendants "contractually accept[ed] an Assumption of Duty" by "apply[ing] for a driver's license and/or insurance license," Pl.'s Opp'n Br. at 14; Pl.'s Am. Opp'n Br. at 15, does not create, out of whole cloth, binding agreements between Plaintiff and Defendants.

Defendants' motions to dismiss are therefore granted as to the assumption of duty claim, without leave to amend.

G.  Count Seven:  Breach of the Implied Covenant of Good Faith and Fair Dealing

Count Seven alleges that Defendants breached the implied covenant of good faith and fair dealing through their "repeated and ongoing failure to act in good faith with honesty, fairness, and responsibility towards the Plaintiff." ECF No. 82 at 14. This claim fails because Plaintiff does

not allege that a contract existed between him and Hanover or between him and Orengo, which is a prerequisite to a claim for breach of the implied covenant of good faith and fair dealing. *See Conn. Child.'s Med. Ctr. v. Cont'l Cas. Co.*, 581 F. Supp. 3d 385, 393 (D. Conn. 2022) ("[I]n the absence of any underlying breach of contract claim, the plaintiffs have no claim for breach of the implied covenant of good faith and fair dealing."); *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 116 (D. Conn. 2014) (similar). Furthermore, it is well-settled that insurers owe no fiduciary duty to third-party claimants because "such a duty would interfere with the insurer's ability to act primarily for the benefit of *its* insured." *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 641–42 (2002). Connecticut law is clear that the duty of good faith and fair dealing exists only between an insurer and its insured; that duty does not extend to a third party like Plaintiff. *Carford v. Empire Fire & Marine Ins. Co.*, 94 Conn. App. 41, 46 (2006) (citing cases). Plaintiff's breach of the implied covenant of good faith and fair dealing claim against both Defendants is therefore dismissed, without leave to amend.

H. Count Eight: Malice

Count Eight brings a claim for "malice" under 42 U.S.C. § 1983, which alleges that "Defendants breached their lawful duty to act with reasonable care and not with malice towards their fellow man/woman." ECF No. 82 at 14. Given that Plaintiff concedes that Count Eight should be analyzed under "common law and/or state law," rather than as a federal § 1983 claim, *see* Pl.'s Opp'n Br. at 20; Pl.'s Am. Opp'n Br. at 20, the Court does not reach the question of whether the "malice" cause of action may be brought as a § 1983 claim against Defendants. But even read as a common law cause of action, the "malice" claim must be dismissed. A claim for "malice" is not a legally cognizable tort claim, and Plaintiff fails to cite to any authority that such a claim exists under federal or Connecticut law. Indeed, "malice" is simply a facet of the "intent" element of some intentional torts. *See, e.g.*, *Maselli v. Reg'l Sch. Dist. No. 10*, 198 Conn. App.

643, 661 (2020) (noting that "[w]ilfulness and malice alike import intent" in the analysis of an intentional assault and battery tort claim).

Thus, Count Eight is dismissed, without leave to amend.

I.    Count Nine:  Violation of CUTPA

Finally, the Court dismisses Plaintiff's CUTPA claim against Hanover.

The Connecticut Unfair Insurance Practices Act ("CUIPA") prohibits unfair insurance practices and defines such practices to include unfair claim settlement practices.  Conn. Gen. Stat. § 38a-816(6).[4]  A plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision.  *Karas*, 33 F. Supp. 3d at 117.  To proceed with a CUTPA/CUIPA claim of unfair settlement practices against an insurer, the plaintiff must allege that the insurer "has committed the alleged proscribed act with sufficient frequency to indicate a general business practice."  *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014) (citing cases).  The plaintiff "must show more than a single act of insurance misconduct."  *Id.* at 165–66; *see also Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 849 (1994) (noting that an insurer's "alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct . . . in the processing of any other claim, does not rise to the level of a 'general business practice'").  Furthermore, as with breach of the implied covenant of good faith and fair dealing, a claim for violation of CUTPA/CUIPA on the basis of an unfair settlement practice cannot succeed in the absence of a viable breach of contract claim.  *Roberts v. Liberty Mut. Fire. Ins. Co.*, 264 F.

---

[4] Plaintiff also cites Conn. Gen. Stat. § 38a-816(8) in his opposition briefing, which prohibits "[m]aking false or fraudulent statements or representations on or relative to an application for an insurance policy for the purpose of obtaining a fee, commission, money or other benefit from any insurer, producer or individual."  *See* Pl.'s Opp'n Br. at 22; Pl.'s Am. Opp'n Br. at 23.  Given that Plaintiff does not allege that he applied for an insurance policy from Hanover, he has no basis for bringing a CUTPA/CUIPA claim premised on alleged misrepresentations in insurance applications.

Supp. 3d 394, 416 (D. Conn. 2017) (citing *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008)).

Because Plaintiff has neither alleged more than one act of insurance misconduct nor asserted a breach of contract claim—and because neither could be plausibly alleged based on the facts of the accident and insurance dispute here—his CUTPA claim against Hanover must be dismissed, without leave to amend.[5]

## IV.    LEAVE TO AMEND

The Court recognizes that a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  As Plaintiff now has the benefit of the Court's rulings as to his claims, the Court finds that he should be allowed one opportunity to amend his complaint in an effort to remedy the deficiencies addressed in this ruling.  Plaintiff may not, however, assert new claims, or reassert claims that this ruling dismisses without leave to amend (Counts One, Two (negligence *per se* as to Hanover), Three, Six, Seven, Eight, and Nine).

Thus, Plaintiff may file a Second Amended Complaint without seeking leave of Court. Plaintiff is warned that a Second Amended Complaint will fully replace the Amended Complaint; thus, it should contain *all* claims against *all* Defendants, on which Plaintiff seeks to proceed (including, for instance, the negligence claims allowed to proceed in this ruling).  Should Defendants believe that the claims in the Second Amended Complaint are subject to dismissal, they may file renewed motions to dismiss.

---

[5] Although Hanover fails to raise this argument in its briefing, the Court notes a third reason to dismiss the CUTPA claim:  a "third party claimant has no private cause of action under CUTPA and CUIPA for alleged unfair settlement practices by [the] insurer prior to judgment" against the insured tortfeasor.  *Carford*, 94 Conn. App. at 52 (collecting cases); *id.* at 53 (holding "the right to assert a private cause of action for CUIPA violations through CUTPA does not extend to third parties absent subrogation or a judicial determination of the insured's liability").  In fact, "[a] majority of the Connecticut Superior Courts . . . has held that § 38a-816(6) does not apply to third party claimants."  *Hipsky v. Allstate Ins. Co.*, 304 F. Supp. 2d 284, 291–92, 292 n.13 (D. Conn. 2004) (collecting cases).

## V.    CONCLUSION

For the reasons detailed herein, Orengo's motion to dismiss, ECF No. 83, is GRANTED in part and DENIED in part, and Hanover's motion to dismiss, ECF No. 87, is GRANTED in full. As all claims against Hanover are dismissed, the Clerk is directed to terminate Hanover from this action.  Orengo's motion is granted as to Count One and Counts Three to Eight, but denied as to Count Two.

Plaintiff may file a Second Amended Complaint by **August 21, 2025**, consistent with this ruling.  If Plaintiff fails to timely file a Second Amended Complaint, this case will proceed on Plaintiff's negligence and negligence *per se* claims against Defendant Orengo only.

**SO ORDERED** at Hartford, Connecticut, this 22nd day of July, 2025.

  */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE