UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GORDON CLARK, | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :  CASE NO. 3:24-CV-00348 (SVN) |
| | : |
| THE HANOVER INSURANCE | : |
| GROUP, INC., *et al.*, | : |
| | : |
|     Defendants. | : |

**ORDER ON MOTION TO COMPEL**

*Pro se* Plaintiff Gordon Clark has brought this action against The Hanover Insurance Group, Inc.[1] and Olga Orengo (collectively "Defendants") for claims arising out of a motor vehicle collision. See Dkt. #82 (Plaintiff's Amended Complaint).

The Honorable Sarala V. Nagala referred this matter to the undersigned to resolve Plaintiff's pending "Second Motion to Compel Production of Records from Defendant Olga L. Orengo" ("Motion") (Dkt. #141).

I. **Background**

Plaintiff alleges that, on the night of July 22, 2023, he and his vehicle were struck by Defendant Olga Orengo ("Orengo") while in Windsor, Connecticut. (Dkt. #82 ¶¶ 1, 5). According to the Complaint, Plaintiff "immediately pulled over… turned on his emergency flashers… [and then] called 911 to report the incident[.]" Id. ¶¶ 6-7.

Shortly thereafter, Plaintiff alleges that "Orengo began knocking on [Plaintiff's] front passenger side window… [and] immediately apologized… for hitting [his] vehicle[.]" Id. ¶ 8. The Complaint then implies that Orengo gave Plaintiff her auto insurance information, which

---

[1] The Court, *J. Nagala*, recently ruled on both Defendants' motions to dismiss. See Dkt. #159. As a result, Defendant Hanover Insurance Group, Inc. is no longer a party to this action. Id.

1

named Defendant Hanover Insurance Group, Inc. ("Hanover") as Orengo's insurer. Id. After this exchange, Plaintiff alleges that a state police officer arrived at the scene, "determined that Defendant Orengo was at fault," and created a police report summarizing the incident. Id. ¶ 9.

Plaintiff alleges that around a week after the accident, he attempted to obtain an estimate for repairs on his vehicle at Olender's Auto Body ("Olender's"), a mechanic shop in East Windsor which was "an approved vendor for [Hanover.]" Id. ¶ 15. Because Olender's was an approved vendor, Plaintiff was allegedly led to believe that repairs to Plaintiff's vehicle could be done once Hanover "initiated" a claim to get an estimate from Olender's. Id. However, Plaintiff alleges that Olender's could not begin the estimate process because Hanover stated that it was "not accepting liability[.]" Id. ¶ 16. Plaintiff claims further that he was informed by Olender's that Hanover was "acting in 'bad faith' because they [did] not even want pictures taken, which Olender's claim[ed] [was] unusual." Id.

The Complaint implies that Plaintiff did not receive any other word from Hanover until nearly six months after the accident,[2] when – Plaintiff alleges – he received a voicemail from his own auto insurance company notifying Plaintiff of a claim that Hanover filed against him. Id. ¶ 22. Allegedly, the voicemail informed Plaintiff that Hanover claimed Plaintiff "had [instead] sideswiped the other vehicle." Id. Subsequently, the Complaint implies that this "fraudulent" claim is what caused Plaintiff to commence suit. See id.

In March of 2024, Plaintiff filed suit, bringing claims for, *inter alia*, negligence, bad faith dealing, and fraud against Defendants Orengo and Hanover. See Dkt. #1 at 14-22; see also Dkt. #82 at 8-16 (Plaintiff's Amended Complaint, listing similar claims). However, the Court has

---

[2] During this time, the Complaint states that Plaintiff repeatedly sought medical intervention and similar relief for his personal injuries from the accident. (Dkt #82 ¶¶ 17-21).

since dismissed all of Plaintiff's claims except for his claims for negligence and negligence *per se* against Orengo.³  See Dkt. #159.

## II.     Procedural History

Near the end of discovery, on April 24, 2025, Plaintiff filed his initial motion to compel various alleged medical and cellphone records from Orengo.  See Dkt. #139.  The Court denied that motion – but without prejudice to refile another – because Plaintiff failed to properly meet and confer with opposing counsel on the discovery dispute.  See Dkt. #140.  Shortly thereafter, Plaintiff notified the Court that he attempted to meet and confer with opposing counsel but could not come to a resolution.  See Dkt. #141.  Because of this, Plaintiff filed the current Motion (Dkt. #141), which is substantially similar to his previous motion to compel.

After the parties fully briefed Plaintiff's Motion, the Court decided to take the Motion under advisement because Plaintiff's Motion appeared to be based on statements that were allegedly made by Orengo and her witnesses during their depositions.  See Dkt. #149; see also Dkt. #143 at 7-8 (Plaintiff's Reply, alleging "deceit and dishonesty in their testimonies under oath"); id. at 8 (where Plaintiff claims he is "seeking reasonable discovery (the truth) to either corroborate and/or impeach said deponents").  However, the Court could not fully assess the merits of Plaintiff's argument because Plaintiff did not provide any portions of the deposition transcripts which identified the statements at issue.⁴  In light of this, the Court instructed Plaintiff

---

³ Plaintiff has been permitted to amend his complaint to cure some of his dismissed claims.  See Dkt. #159 ("Plaintiff may file a Second Amended Complaint by August 21, 2025, consistent with this ruling.").  However, as Plaintiff has neither filed nor served an amended complaint yet, the Court proceeds to assess Plaintiff's Motion (Dkt. #141) considering only Plaintiff's claims for negligence.

⁴ The Court notes that, under the District of Connecticut's Local Rules, the Court likely had discretion to deny Plaintiff's Motion (Dkt. #141) on this basis alone.  See D. CONN. L. CIV. R. 5(e)(3) ("Every document used by parties moving for or opposing an adjudication by the Court… shall be filed with the Court."); 5(f)(2)-(3) ("A party seeking relief under any of the Federal Rules of Civil Procedure shall file [] that portion of the deposition… that is the subject of the dispute.  When discovery material not on file is needed for consideration of a motion or for an appeal, upon application to… the Court…, the necessary portion of discovery material shall be filed with the Clerk.").  However, the Court instead decided to take Plaintiff's Motion under advisement.  See Dkt. # 149.

3

to produce the relevant pages of the deposition transcripts to help the Court determine if Plaintiff could meet his burden in moving to compel the requested items. (Dkt. #149).

On July 16, 2025, Plaintiff filed his response to the Court's order to produce relevant pages of the deposition transcripts. (Dkt. #157). Although Plaintiff acknowledges that certified transcripts of the relevant depositions exist, see id. at 2 ("opposing counsel ordered a written transcript to be produced by their hired court reporter"), Plaintiff instead attached his own transcription of the video depositions. Thus, the Court only has Plaintiff's transcription to assess whether he has met his burden to compel the requested discovery items.[5]

### III. Legal Standard

Rule 26 of the Federal Rules of Civil Procedure generally grants broad access to discovery when a "matter… is [1] relevant to any party's claim or defense and [2] proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1).

The party seeking discovery has the burden of demonstrating relevance, see Bagley v. Yale Univ., 315 F.R.D. 131, 144 (D. Conn. 2016), which broadly includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Sullivan v. StratMar Sys., Inc., 276 F.R.D. 17, 19 (D. Conn. 2011) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

"Still, even relevant information must be reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." New Falls Corp. v. Soni, No. CV 16-6805 (ADS) (AKT), 2020 U.S. Dist. LEXIS 94747, at *4 (E.D.N.Y. May 29, 2020) (citations and internal quotations omitted). In other words, "[t]he fact that particular

---

[5] Use of an uncertified transcript is ordinarily insufficient for a movant to meet his or her burden. However, given the nature of the case and allegations present, the undersigned finds that he can resolve Plaintiff's Motion (Dkt. #141) by relying on Plaintiff's version of the transcript.

information is relevant does not mean that its production will always be proportional to the needs of the case." Elisa W. v. City of N.Y., No. 15CIV5273LTSHBP, 2018 WL 6695278, at *2 (S.D.N.Y. Dec. 20, 2018).  "[P]roportionality [is assessed] … 'by considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" Conservation L. Found., Inc. v. All-Star Transp., LLC, No. 3:21-CV-00201 (JBA), 2022 WL 16901999, at *1 (D. Conn. Nov. 11, 2022) (quoting FED. R. CIV. P. 26(b)(1)); see also id. at *3 ("Each party bears a burden with respect to proportionality.").

After the party seeking discovery has demonstrated relevance and proportionality, "[t]he party resisting discovery [maintains the right to object but also] bears the burden of showing why discovery should be denied."[6] Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).  To that end, Rule 26(b) "allows the Court to limit discovery, *sua sponte* or upon motion, when, for example, such 'discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" Mercer v. Rovella, No. 3:16-CV-329 (CSH), 2022 WL 1514918, at *2 (D. Conn. May 12, 2022) (quoting FED. R. CIV. P. 26(b)(2)(C)(i)).

With this in mind, however, a district court still has discretion in ruling on a motion to compel and only abuses that discretion when "discovery is so limited as to affect a party's substantial rights." In re 650 Fifth Ave., 934 F.3d 147, 157 (2d Cir. 2019).

---

[6] The party resisting discovery also "bears the burden on the 'burden and expense' element of the proportionality analysis." Huseby, LLC v. Bailey, No. 3:20-CV-00167 (JBA), 2021 WL 3206776, at *8 n.3 (D. Conn. July 29, 2021) (citing FED. R. CIV. P. 26 advisory committee notes to 2015 amendments).

### IV.     Discussion

    A.  Defendant Orengo's Medical Records

Plaintiff has moved to compel several medical records from Orengo regarding her use/non-use of prescription medications, alcohol, and marijuana. (Dkt. # 141 at 19-20). In particular, Plaintiff seeks the production of letters from Orengo's doctors "confirming" that she does not take or use the aforementioned substances. Id. As noted earlier, Plaintiff states that the grounds which justify his Motion are that Orengo "incredulously claimed under oath that she was not on any prescription medications, including, but not limited to any pain medications, before, during, or after [a later] hip surgery."[7] (Dkt. # 143 at 8). Plaintiff claims further that the alleged medical records are necessary to impeach Orengo because her son Felix Miguel Santiago ("Santiago"), during his deposition, "implied otherwise, that is before suddenly becoming forgetful and/or repeatedly and incredulously claiming under oath of not remembering[.]" Id.

In response to Plaintiff's Motion, Orengo argues that these items are irrelevant to the current suit. (Dkt. # 141 at 19-20).[8] Moreover, Orengo maintains that she does not have any letters of this nature and that, to her knowledge, such letters do not even exist. Id.

To begin, the Court denies Plaintiff's motion to compel these alleged letters because the "[p]roduction of [documents] that do not exist cannot be compelled." Merritt v. United States, No. 5:18-cv-200, 2021 U.S. Dist. LEXIS 258728, at *5 (D. Vt. Dec. 10, 2021). "Generally, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot

---

[7] There is no dispute that Orengo had surgery on her hip "way after the incident" for reasons unrelated to "any injury from the incident[.]" (Dkt. #157 at 4). The record also suggests that Plaintiff only became aware of Orengo's surgery and subsequent use of a cane at Orengo's deposition held on February 13, 2025. See Dkt. #143 at 8.
[8] Orengo's "Objection to Plaintiff's Second Motion for Order to Compel Discovery" ("Response") (Dkt. #142) is rather short and merely stipulates to maintaining the objections that she had previously made in response to Plaintiff's initial requests for production. Thus, the Court cites to Orengo's objections in response to Plaintiff's initial discovery requests instead of citing to Orengo's formal Response to the pending Motion.

be required to produce the impossible." Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc., 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (citations and internal quotations omitted). Yet, "[i]n the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." Golden Trade v. Lee Apparel Co., 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992). Absent any such showing, "the Court accepts the representations of counsel." Hollis v. Dep't of Mental Health, No. 3:14 CV 00516 (AWT), 2016 U.S. Dist. LEXIS 47459, at *6 (D. Conn. Apr. 8, 2016).

Plaintiff here has not made the requisite showing that Orengo's representations are untrue or incorrect. Indeed, nothing in the record indicates that these alleged doctors' letters even exist, and the Court finds that Plaintiff's entire basis for assuming that these letters exist comes from Plaintiff's pure speculation. In light of this, the Court notes that it cannot grant Plaintiff's request for these items as it is well established within this Circuit that "courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition[.]'" Collens v. City of N.Y., 222 F.R.D. 249, 253 (S.D.N.Y. 2004).

Even if these letters from Orengo's doctors did exist and were in Orengo's custody, however, Plaintiff has not met his burden to establish that these letters would be relevant.

For one, there is no dispute that Orengo's hip surgery occurred well after the car accident at issue. As such, the Court cannot discern a reason why any testimony or documentation related to Orengo's hip surgery – or any potentially related prescription/drug use – is germane to suit.

Second, Plaintiff's own version of the transcript illustrates that the testimonies of Orengo and Santiago do not contradict each other as to Orengo's alleged prescription/drug use. According to Plaintiff's version of the transcript, Orengo answered "no" when asked if she took any prescription drugs, medications, or marijuana. (Dkt. #157 at 3). When asked a similar line

of questions, while Santiago initially answered that Orengo did not take any prescription medications, he later clarified that he did not know "anything about her medical [history]."[9] Id. at 4-6. Thus, upon review of this "record", the Court cannot see how Santiago's testimony contradicts Orengo's. At most, Santiago contradicted *himself* – although even Plaintiff's version of events suggests that Santiago merely clarified his earlier statements.[10] As such, the Court finds that Santiago's testimony neither contradicts Orengo nor makes any letters from her doctors relevant.

For these reasons, the Court **DENIES** Plaintiff's motion to compel letters from Orengo's doctors.

B. Defendant Orengo's Cellphone Records

In addition to letters from Orengo's doctors, Plaintiff seeks various cellphone records "including, but not limited to all incoming and outgoing phone calls, text messages, Internet use, and GPS signals/location data." (Dkt. #141 at 20). In support of his Motion, Plaintiff alleges that Orengo and her witnesses have given "conflicting accounts of the events surrounding the car incident" which justify "the need for Defendant Orengo to produce her phone records." (Dkt. #143 at 8-9). In particular, Plaintiff claims that their "accounts of where they were coming from before the car incident…, and where they were going [afterward] … exhibit[] deceit and dishonesty…." Id. at 8.

---

[9] Although it appears that Santiago expressed some resistance to Plaintiff's questions, this only appears to have occurred because Santiago felt "uncomfortable" that Plaintiff was "asking [him] the same thing and saying the same thing." (Dkt. #157 at 5-6). Thus, in context, Santiago's behavior reads as frustration rather than being 'evasive'.

[10] Plaintiff appears to also make much of the fact that Santiago's girlfriend, Anaisha Marie Feliciano ("Feliciano"), opined that an individual could be "prescribed medication after anything extreme like [Orengo's hip surgery.]" (Dkt. #157 at 8). However, in that same response, Feliciano reiterates that she doesn't "pay attention to stuff like that" and later emphasizes, "I told you that I don't pay attention to what [Orengo] is taking. So, I don't know if she took medicine." Id. Thus, from Plaintiff's own transcription, Santiago and Feliciano appear to be saying the *same* thing – that they do not know anything about Orengo's medical history or use of any medication.

8

In response, Orengo maintains that these records are irrelevant and are otherwise overly burdensome to produce in relation to the needs of the case. (Dkt. #141 at 20-21).

In short, the Court finds that Plaintiff is not entitled to Orengo's cellphone records because Plaintiff has not met his burden to demonstrate their relevance to the case.[11]

To begin, Plaintiff's transcription fails to identify any statement made by Orengo's witnesses related to where Orengo was driving to and from on the night of the accident, much less demonstrate any conflicting testimony on this topic. Without any evidence to support Plaintiff's claim that there was deceit as to "where they were coming from before the car incident…, and where they were going [afterward,]" (Dkt. #143 at 8), the Court cannot discern how Orengo's cellphone records would "either corroborate and/or impeach said deponents['] under oath testimony." Id. As such, Orengo's cellphone records are not relevant here.

Furthermore, the Court cannot discern from Plaintiff's version of the transcript any broader "conflicting accounts of the events surrounding the car incident[.]" Id. at 8-9. As noted earlier, there is no documented disagreement regarding where Orengo was heading to and from on the night of the accident. Additionally, both of Orengo's witnesses testified that they did not recall Orengo being on her phone around the time of the collision. (Dkt. #157 at 5, 9). Upon review of Plaintiff's transcription, the Court finds that the *only* point on which Orengo's witnesses appeared to differ was whether they recalled Orengo using her GPS during the night of the incident: whereas Santiago answered, "She always uses GPS, Yes [she used her GPS,]" his girlfriend Feliciano answered, "No. I don't recall." Id. at 5, 9. Yet, despite Plaintiff's claim that

---

[11] To be sure, a plaintiff may move to compel phone records "to ascertain whether [the] defendant… was using her phone while operating the vehicle." Rodriguez v. Akbar, No. 2:23-cv-01520-JAD-MDC, 2024 U.S. Dist. LEXIS 100460, at *7 (D. Nev. June 6, 2024); see also Lisischeff v. Mastec N. Am., Inc., No. 3:20-CV-1156 (RNC), 2021 U.S. Dist. LEXIS 70125, at *9-11 (D. Conn. Apr. 12, 2021). However, Plaintiff has repeated that the grounds for his Motion are "to either corroborate and/or impeach said deponents" for their "deceit and dishonesty in their testimonies under oath[,]" (Dkt. #143 at 7-8), not "to ascertain whether [Orengo]… was using her phone while operating the vehicle." Rodriguez, 2024 U.S. Dist. LEXIS 100460, at *7.

9

their responses demonstrate dishonesty, the Court notes that these answers are not inapposite to one another. The question posed was merely one of recollection, so their testimonies only illustrate that while Santiago remembers Orengo using her GPS, Feliciano does not. Thus, even upon review of Plaintiff's version of the transcript, the Court cannot find any evidence to support Plaintiff's claim that there are "conflicting accounts of the events surrounding the car incident"[12] which justify "the need for Defendant Orengo to produce her phone records." (Dkt. #143 at 8-9).

For these reasons, the Court **DENIES** Plaintiff's motion to compel Orengo's cellphone records.

### V.     Conclusion

For the reasons above, the Court **DENIES** Plaintiff's Motion (Dkt. #141).

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). As such, it is an order of the Court unless reversed or modified by a district judge upon a motion timely made.

Dated this 30th day of July, 2025 at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge

---

[12] Even if there were conflicting accounts between Orengo's witnesses, the Court is unsure whether Plaintiff's request for Orengo's various cellphone records is "proportional to the needs of the case[.]" See FED. R. CIV. P. 26(b)(1); cf. Lisischeff, 2021 U.S. Dist. LEXIS 70125, at *10 (narrowing permissible discovery of phone records where movant's request was "clearly overbroad").