UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GORDON CLARK,<br>　　*Plaintiff*, | )　3:24-CV-348 (SVN)<br>)<br>) |
| v. | )<br>) |
| HANOVER INSURANCE GROUP, *et al.*,<br>　　*Defendants*. | )<br>)　January 30, 2026 |

**<u>RULING AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>**

Sarala V. Nagala, United States District Judge.

Plaintiff Gordon Clark, proceeding *pro se*, brings suit against Defendant Olga L. Orengo and her auto insurance carrier, The Hanover Insurance Group, Inc. ("Hanover"), related to a motor vehicle collision between Plaintiff and Orengo. Plaintiff alleges that, even though Orengo was at fault for the accident, Hanover and Orengo have refused to accept liability and have filed an insurance claim against Plaintiff, stating that he was at fault.

Plaintiff has filed a second amended complaint ("SAC"), bringing claims of negligence, negligent infliction of emotional distress, and insurance fraud against both Defendants, with an additional claim for negligence *per se* against only Defendant Orengo. SAC, ECF No. 166. Defendant Hanover has moved to dismiss Plaintiff's amended complaint in full for failure to state a claim. Hanover Mot. to Dismiss, ECF No. 168. Defendant Orengo has moved to dismiss the negligent infliction of emotional distress and insurance fraud claims. Orengo Mot. to Dismiss, ECF No. 172. For the reasons discussed below, the Court GRANTS both motions to dismiss. This action shall proceed as against Defendant Orengo only as to the negligence and negligence *per se* claims alleged against her in the SAC, though the Court is separately ordering Defendant Orengo to provide information about her place of domicile, for purposes of assessing whether diversity of citizenship exists in this action.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The Court accepts the following allegations in Plaintiff's SAC as true for purposes of deciding Defendants' motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The parties' familiarity with Plaintiff's allegations is presumed, and the Court does not repeat their full scope here.

On the evening of July 22, 2023, Plaintiff stopped at a red light leading to an Interstate 91 North entrance ramp in Windsor, Connecticut. SAC, ECF No. 166, St. of Facts ¶ 1.[1] Plaintiff was in the right-hand lane. *Id.* Defendant Orengo was stopped at the same red light, in the left-hand lane. *Id.* ¶ 3. When the light turned green, Plaintiff turned left to enter the highway entrance ramp and was "T-boned" by Defendant Orengo's vehicle, causing Plaintiff's neck to "snap" from side to side. *Id.* ¶¶ 6–7. Plaintiff immediately pulled over and called 911 to report the incident and request police assistance. *Id.* ¶ 9. Defendant Orengo then approached Plaintiff, apologized for colliding into his vehicle, and asked Plaintiff if he wanted to exchange insurance information without reporting the accident to the police. *Id.* ¶ 11. Plaintiff informed Defendant Orengo that he had already called 911 and the police were on their way. *Id.* ¶ 12. Plaintiff then asked Orengo whether she had auto insurance, which she insisted she did. *Id.* ¶ 13. Orengo is insured by Hanover. *Id.* ¶ 20.

Within approximately fifteen minutes of Plaintiff reporting the incident, State Police Officer Christopher J. Genovese arrived at the scene and interviewed Plaintiff and Orengo. *Id.* ¶ 14. In the Accident Information Summary, Officer Genovese reported that Orengo "was found to be at fault and issued a written warning for violation of CGS 14-236 Failure to Maintain a Proper Lane." *Id.* ¶ 15; *see also* Accident Summ., Ex. B, ECF No. 166-2 at 2–3.

---

[1] As Plaintiff's SAC restarts its numbering convention at paragraph one when it describes the causes of action alleged, citations in this ruling to paragraphs of the SAC are taken from the SAC's "Statement of Facts" section.

Following the accident, Plaintiff reached out to Olender's Auto Body ("Olender's"), one of Hanover's approved vendors, to obtain a monetary estimate of the damage to his vehicle. ECF No. 166 ¶¶ 20–21. Olender's later informed Plaintiff that Hanover was not accepting liability for the damage and had not authorized an estimate for the repair. *Id.* ¶ 21. Olender's told Plaintiff it believed that Hanover was acting in bad faith because Hanover did not want pictures of the damage, which Olender's stated was unusual. *Id.*

As a result of the accident, Plaintiff began experiencing pain on the left side of his neck, which eventually traveled to his entire neck, head, shoulders, and back. *Id.* ¶ 16. Plaintiff further alleges that he has suffered "years" of "varying pain and suffering, from mild to excruciating, that has caused countless hours of pain and suffering, and limitations on [his] work and employment options and daily activities, as well as countless hours of lost sleep." *Id.* ¶ 26. Plaintiff also alleges that the pain has caused him emotional harm. *Id.*

On February 2, 2024, Plaintiff's auto insurer, Amica Mutual Insurance Company ("Amica"), notified Plaintiff that Hanover and Orengo had jointly filed a claim with Amica against him, claiming that his vehicle had sideswiped Orengo's vehicle. *Id.* ¶ 27. Plaintiff alleges this caused him "to suffer emotional distress[.]" *Id.* Plaintiff terminated his legal representation for this personal injury action based on Defendants' claim and instead filed a *pro se* complaint against Defendants. *Id.* 28. Plaintiff alleges that Hanover and Orengo's decision to file a claim against him "caused [him] to suffer emotional distress" related to his fear of litigation costs, unjust financial loss, and the possible cancellation of his car insurance through Amica, with whom he had held a policy for more than twenty years without a single claim. *Id.* ¶ 27. The collision has also caused Plaintiff to incur out-of-pocket expenses in repairing his damaged vehicle, the loss of the use of his vehicle, and unreliability of the vehicle's performance. *Id.*

Plaintiff further alleges that, at the time of the collision, Orengo had been driving under the influence and/or driving while distracted. *Id.* ¶ 31. Plaintiff alleges that, due to a "hip problem," Orengo "likely and reasonably [was] taking over-the counter and/or prescription pain medication and/or self-medicating with alcohol and/or recreational drugs." *Id.*

Plaintiff initiated the present action on March 13, 2024. Compl., ECF No. 1. Defendant Orengo moved to strike part of Plaintiff's complaint, which the Court granted in part and denied in part. Mot. to Strike, ECF No. 52; Order, ECF No. 78. Plaintiff then filed an amended complaint, which Defendants moved to dismiss. Orengo Mot. Dismiss, ECF No. 83; Hanover Mot. Dismiss, ECF No. 87. On July 22, 2025, the Court granted in part and denied in part Defendant Orengo's motion to dismiss and granted Defendant Hanover's motion to dismiss in full. *Clark v. Hanover Insurance Grp., Inc.*, No. 3:24-CV-348 (SVN), 2025 WL 2053366 (D. Conn. July 22, 2025) ("*Clark I*"). The Court also presumes the parties' familiarity with that decision.

On August 21, 2025, Plaintiff filed the SAC. ECF No. 166. Plaintiff brings the following four claims: (1) negligence against both Defendants (Count One); (2) negligence *per se* against Defendant Orengo (Count Two); (3) negligent infliction of emotional distress, pain, and suffering against both Defendants (Count Three); and (4) "insurance fraud" against both Defendants (Count Four). *Id.* at 24–32.

Defendants have each filed motions to dismiss. Defendant Hanover moves to dismiss all Plaintiff's claims against it, *see* ECF No. 168, while Defendant Orengo moves to dismiss only Counts Three and Four against her. ECF No. 172. Plaintiff has subsequently withdrawn his negligence claim in Count One against Hanover. Pl. Opp'n to Hanover MTD, ECF No. 179 at 5.

4

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that Courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to

5

raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But, at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 570).

### III. DISCUSSION

For the reasons discussed below, the Court GRANTS Hanover's motion to dismiss in full, and GRANTS Orengo's motion to dismiss Counts Three and Four in full. As Defendant Orengo has not moved to dismiss Plaintiff's negligence and negligence *per se* claims against her, they may proceed, provided that diversity jurisdiction exists.

#### A. Count One: Negligence

Plaintiff's SAC alleges a claim of common law negligence as against both Defendants. ECF No. 166 at 24. As Plaintiff has withdrawn his negligence claim against Defendant Hanover, the Court does not address Defendant Hanover's arguments regarding dismissal of this claim. Additionally, Defendant Orengo has not moved to dismiss the negligence claim against her. Thus, Plaintiff's negligence claim in Count One may proceed as against Defendant Orengo only.

#### B. Count Two: Negligence *Per Se*

Plaintiff also alleges a negligence *per se* claim as against Defendant Orengo only. *Id.* at 26. Because Defendant Orengo has not moved to dismiss this claim either, it too may proceed as against her.

#### C. Count Three: Negligent Infliction of Emotional Distress

Next, the Court dismisses Plaintiff's claims for negligent infliction of emotional distress ("NIED") against both Defendants.

Plaintiff has alleged that both Defendants "breached their lawful duty to not recklessly, negligently, and fraudulently continue to inflict physical, mental, and emotional distress, pain, and suffering on another fellow man/woman/neighbor," and that Defendants were generally "negligent." *Id.* at 29. As a result, Plaintiff has suffered "serious physical, mental, and emotional distress, pain, and suffering of the type that a reasonable person would expect to occur." *Id.* at 30. In his reply briefing, Plaintiff specifies that he is advancing two theories of NIED liability: (1) the "collision" theory (only against Defendant Orengo) based on her "collision with Plaintiff's vehicle" and (2) the "insurance claim" for "Defendants Orengo's and Defendant Hanover's filing of a fabricated and fraudulent insurance claim with Plaintiff's auto insurance provider." ECF No. 179 at 9.² Plaintiff's NIED claims against Defendants fail under both theories.

To state a claim for NIED, a plaintiff must plausibly allege: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003). "In [NIED] claims, unlike general negligence claims, the foreseeability of the precise nature of the harm to be anticipated is a prerequisite to recovery even where a breach of duty might otherwise be found." *Perodeau v. City of Hartford*, 259 Conn. 729, 754 (2002) (cleaned up; quoting *Maloney v. Conroy*, 208 Conn. 392, 398 (1988)).

First, Plaintiff's "collision theory" of NIED liability against Defendant Orengo is duplicative of his negligence claim against her and must be dismissed on that ground. *See*

---

² While Plaintiff's dual theory of NIED liability is not clearly laid out in his SAC, the Court has an obligation to construe *pro se* pleadings "to raise the strongest arguments that they suggest." *Fowlkes*, 790 F.3d at 387 (quoting *Triestman*, 470 F.3d at 477). In his SAC, Plaintiff has alleged Defendants are liable "[b]y engaging in the negligent manner described in this Count *and* Amended Complaint." ECF No. 166 at 25–26 (emphasis added). In the interest of justice, the Court construes this statement to support Plaintiff's dual theories of NIED liability as further clarified in his objection to Defendants' motions to dismiss and thus will consider both theories.

7

*Washington v. City of Bridgeport*, No. 3:23-CV-01607 (KAD), 2025 WL 562621, at *7 (D. Conn. Feb. 20, 2025) (dismissing negligence claim as duplicative of NIED claim). "Duplicative claims shall be dismissed when they are based on identical conduct and seek the same relief." *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*, 156 F. Supp. 3d 348, 362 (E.D.N.Y. 2016) (collecting cases). Plaintiff's "collision theory" of NIED liability is based on "the Collision related to Defendants' ongoing negligence," which has resulted in "serious physical, mental, and emotional distress, pain, and suffering." ECF No. 166 at 30. Thus, the basis for Plaintiff's "collision theory" NIED claim, and the relief sought, are the same as that for his negligence claim against Defendant Orengo: personal injury (to include emotional distress damages) and property damage. Because Plaintiff's NIED claim is based on identical conduct and seeks the same relief as the negligence claim, it must be dismissed as duplicative.

Regardless, even taking the "collision theory" on its merits, Plaintiff fails to allege a NIED claim against Defendant Orengo. Neither the SAC nor Plaintiff's opposition to Defendants' motions to dismiss contain any factual allegations of emotional distress beyond mere conclusory statements as to the collision itself. *See e.g.*, *id.* (Plaintiff suffered serious . . . emotional distress); ECF No. 179 at 9 ("Defendant Orengo's action of driving her SUV . . . created an unreasonable risk of causing Plaintiff . . . to suffer emotional distress"). Even if Plaintiff had alleged sufficient details as to his emotional distress, though, Plaintiff has not further demonstrated "the foreseeability of the precise nature of the harm to be anticipated." *Perodeau*, 259 Conn. at 754. Simply alleging that Defendant Orengo's "unsafe lane change caused the accident and injuries" to Plaintiff "is insufficient as a matter of law" to satisfy the foreseeability requirement. *Stelma v. Comarella*, No. TTD-CV-146007736S, 2014 WL 4637548, at *1 (Conn. Super. Ct. Aug. 14, 2014). While emotional distress is generally an expected response to an event like a car accident,

8

Plaintiff must allege "facts which establish that it was reasonably foreseeable that the accident would cause [him] to suffer severe distress." *Id.* Plaintiff has not alleged, for example, that Defendant Orengo knew at the time of the accident that Plaintiff did not have health insurance. As a result, Plaintiff's "collision theory" of NIED liability against Defendant Orengo fails on its merits as well.

Plaintiff's "insurance claim" theory fares no better. Plaintiff alleges that Defendants filed a "fraudulent claim" against him with his auto insurance company, Amica, falsely claiming that he was at fault for the accident on July 22, 2023. ECF No. 166 ¶ 27. As a result, Plaintiff "suffer[ed] emotional distress, specifically, [anxiety, sleeplessness, panic, etc.]" due to financial hardship and fear that he might lose his longstanding car insurance coverage. *Id.* Thus, as to his "insurance claim" theory, Plaintiff has alleged specific emotional harms he faced as a result of Defendants' fraudulently filed claim.

But despite identifying specific emotional distress, the NIED "insurance claim" theory against Defendants Orengo and Hanover still fails on its merits and must be dismissed. Because Plaintiff's NIED claim against Defendants Orengo and Hanover relies on their alleged negligence in causing Plaintiff harm, the necessary elements of a negligence claim must be alleged. *Banatoski v. Sheridan*, No. CV 97-0483809-S, 1998 WL 764493, at *4 (Conn. Super. Ct. Sept. 17, 1998). In alleging a negligence claim, a cognizable duty of care must first exist. *Waters v. Autuori,* 236 Conn. 820, 826 (1996). "Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier of fact consider whether that duty was breached." *Ruiz v. Victory Props., LLC*, 315 Conn. 320, 328 (2015).

Neither Defendant Orengo nor Hanover owes any duty to Plaintiff based on the alleged false insurance claim because an insurer or, by extension, the insured, "has no duty to settle an

9

insurance claim with a third-party claimant fairly." *Banatoski*, 1998 WL 764493, at *4 (holding that because the insurer did not owe the third-party claimant a duty to settle her claim fairly, it cannot be liable to the third-party claimant for a negligence-related cause of action); *see also O'Connor v. QBE Ins. Corp.*, No. CV-126032396, 2018 WL 4838937, at *6 (Conn. Super. Ct. Sept. 19, 2018) (recognizing that "there are cases holding that a third-party claimant to the proceeds of a liability insurance policy (i.e., a party injured by the acts of one insured under the policy), as a nonparty to the insurance contract, is not owed any duty by the insurer that would support an action in negligence").

Plaintiff does not allege that he is party to any contract with either Defendant Orengo or Hanover; thus, he is a third party as to the alleged fraudulent claim.  Because Defendants do not owe a duty to Plaintiff, "[they] cannot be liable to [P]laintiff for negligent infliction of emotional distress." *Banatoski*, 1998 WL 764493, at *4; *see also Decormier v. Grange Mut. Cas. Co.*, No. 525835, 1993 WL 445925, at *1 (Conn. Super. Ct. Oct. 18, 1993) (noting, in a motor vehicle accident case, that "[t]o permit a claim of emotional distress by a party to third party litigation because of the conduct of the opposing party would open the door to a flood of endless unjustifiable litigation").

And although Plaintiff alleges that Defendants knew "from on or around March 13, 2024 . . . that Plaintiff does not have health insurance," ECF No. 166 at 25, that fact alone does not support an NIED claim.  Plaintiff has not alleged that either Defendant was aware of Plaintiff's lack of health insurance when Hanover denied Plaintiff's repair claim in August of 2023, or when Defendants filed an allegedly fraudulent claim against Plaintiff in February of 2024.  *Id.* at 8, 12.  Plaintiff only alleges that Defendants became aware of Plaintiff's lack of health insurance in March of 2024, *after* Plaintiff filed this suit.  *See id.* at 25.  The fact that Defendant Hanover denied

liability and that both Defendants sought a competing determination of liability, which caused hardship for Plaintiff, is not enough to support a NIED claim. *See Chima Enter. Inc. v. Chubb Nat'l Ins. Co.*, No. 3:23-CV-1331 (VAB), 2024 WL 4349034, at *13 (D. Conn. Sept. 30, 2024) (dismissing NIED claim against insurer, when defendants simply "constru[ed] the insurance policy differently from what the [p]laintiffs wanted"). Thus, Plaintiff's NIED claim in Count Three against both Defendants must be dismissed.

> D. Count Four: Insurance Fraud

The Court next dismisses Plaintiff's insurance fraud claim against both Defendants. Plaintiff alleges, without any specificity as to the relevant statute, that Defendants breached their "lawful duty to not violate the 15 U.S. Code - Chapters 20 and 93 (Regulation of Insurance, and Insurance) against the Plaintiff." ECF No. 166 at 31. In Plaintiff's opposition to Defendants' motions to dismiss, he does not rely on any statutory authority, but rather argues Defendants' actions are "unlawful under the common law." ECF No. 179 at 11. Plaintiff's insurance claim against both Defendants fails whether brought under statute or common law.

First, however, the Court rejects Defendant Hanover's assertion that Plaintiff has not met the heightened pleading standard applicable to actions alleging fraud. Under this heightened standard, to survive a motion to dismiss, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (citation omitted). Accepting Plaintiff's allegations as true, the Court finds that Plaintiff satisfies the heightened pleading standard for a fraud claim against both Defendants.

In the SAC, Plaintiff alleges that Defendant Hanover denied Plaintiff's claim to cover repair work to his car following the accident, *see* ECF No. 166 ¶ 21, and that both "Defendants

11

Hanover and Orengo" filed a claim against him for the July 22, 2023, accident and that he received a phone call from Amica relaying that "Defendants Hanover and Orengo [were] claiming (fraudulently claiming) that 'our vehicle had sideswiped [Plaintiff's] vehicle,'" *id.* ¶ 27. Thus, as to the second allegation, unlike with the first amended complaint, Plaintiff has alleged that both Defendants were involved in the fraudulent insurance claim filed against him. *Compare* First Am. Compl., ECF No. 82 at 7 (Plaintiff's insurer called "concerning a recent claim (a fraudulent claim - Claim No. 60010200642) filed against Mr. Clark by Defendant Hanover concerning the incident on July 22, 2023."), *with* ECF No. 166 ¶ 27 (Defendants Hanover and Orengo [were] claiming (fraudulently claiming)"). Plaintiff contends this competing insurance claim was fraudulent because he was not at fault for the collision, as demonstrated by Defendant Orengo's initial apology, the police report, and the lack of any notable damage to Orengo's vehicle or passengers. *See* ECF No. 166 ¶ 27; Police Report, Ex. C, ECF No. 166-3 at 11. Thus, Plaintiff has alleged sufficient facts to support the heightened pleading standard for a claim of fraud.

Nevertheless, the Court concludes that the insurance fraud claim against Defendants Hanover and Orengo must be dismissed. First, the Court notes that Plaintiff's citation to two entire chapters of the United States Code is not a sufficiently particularized statutory basis to support his claim. *See* ECF No. 166 at 31 (citing to Chapters 20 and 93 of Title 15 of the U.S. Code). Further, upon review of each chapter, neither appears to provide a cause of action under which Plaintiff can bring suit, or provides a federal standard that either Defendant has violated.

As to Plaintiff's common law claims, Plaintiff has failed to cite any authority to support his assertion that federal common law exists for the type of insurance fraud alleged. "[T]here is no federal general common law." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *City of N.Y. v. Chevron Corp.*, 993 F.3d 81, 89 (2d Cir. 2021) ("[F]ederal common law exists in only the few

and restricted enclaves . . . where a federal court is compelled to consider federal questions that cannot be answered from federal statutes alone." (cleaned up; citations omitted)). The hesitation to develop federal common law safeguards our separation of powers. *See Hernandez v. Mesa*, 589 U.S. 93, 100 (2020) ("[W]hen a court recognizes an implied claim for damages on the ground that doing so furthers the 'purpose' of the law, the court risks arrogating legislative power."). Accordingly, only two categories of issues demand the existence of federal common law: (1) "those in which a federal rule of decision is necessary to protect uniquely federal interests," and (2) "those in which Congress has given the courts the power to develop substantive law." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (citations omitted); *see also Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421 (2011).

Plaintiff does not point the Court to any uniquely federal interests at issue here, nor has the Court been made aware of any federal legislation providing the authority to develop substantive law in the area of alleged insurance fraud.[3] Plaintiff critiques general insurance practices that "delay, deny, and defend" against claims, and alleges "the court system allows [insurance companies]" to carry out this "harm" to people like Plaintiff, resulting in the general degradation of law. ECF No. 166 at 33. This critique is not a cognizable claim, however, much less a cognizable insurance fraud claim.

The insurance fraud claim against Defendants Hanover and Orengo also fails even if it were brought as a state common law fraud claim. Under Connecticut law, "[t]he essential elements of an action in common law fraud . . . are that: (1) a false representation was made as a statement

---

[3] In fact, 15 U.S.C. § 1012, part of Chapter 20 of Title 15, which Plaintiff cites as support for his insurance fraud claim, states "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." This suggests that Congress has not given courts the power to develop substantive federal law on insurance issues but, rather, has expressly left that question to the states.

13

of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Sturm v. Harb Dev., LLC*, 298 Conn. 124, 142 (2010) (citation omitted). In addition, "the party to whom the false representation was made [must] claim[] to have relied on that representation and to have suffered harm as a result of the reliance." *Id.*

First, as to Hanover's refusal of Plaintiff's claim for vehicle repair costs, Plaintiff has not alleged any representation made by Defendant Hanover directly to Plaintiff. Rather, an employee of Olender's auto repair contacted Plaintiff and informed him that Hanover would not cover the cost of the repairs. ECF No. 166 ¶ 21. There is no evidence that Hanover ever provided a false statement to Plaintiff or that Plaintiff was induced to act in reliance on any such false statement. With respect to Defendants' filing of a claim with Plaintiff's insurer, Plaintiff has also only alleged that Defendants made a false representation to Amica, not directly to Plaintiff himself. *See Id.* ¶ 27 (describing how Defendants allegedly filed a claim with Amica, who then contacted Plaintiff about the claim). Plaintiff's knowledge of Hanover's claim came from a voicemail from Amica, not from either Defendant. *Id.* Nor does Plaintiff allege that the claim was made in order to induce him to act. With respect to reliance, he alleges that he terminated the legal services of his personal injury attorney to represent him in this matter after learning of the competing claim. *Id.* ¶ 28. But he does not include any facts to support how or why Defendants' alleged misrepresentations caused him to act in that way (nor why that decision was detrimental to him given his stated concern over litigation costs, *see id.* ¶ 27). As a result, Plaintiff does not allege facts sufficient to support a claim for common law fraud against Defendants Hanover and Orengo under Connecticut law. Count Four is therefore dismissed against both Defendants.

### IV. LEAVE TO AMEND

Defendants urge the Court to dismiss Plaintiff's claims without leave to amend. *See* ECF No. 180 at 5–6; ECF No. 172-1 at 5. The Court agrees that leave to amend would be inappropriate with respect to Plaintiff's NIED and insurance fraud claims against both Defendants. In the Court's ruling on Plaintiff's first amended complaint, the Court made clear that Plaintiff "should be allowed *one* opportunity to amend his complaint" to correct the deficiencies in the claims the Court had allowed to be re-pleaded. *Clark I*, 2025 WL 2053366, at *13 (emphasis added). The Court has now provided Plaintiff this opportunity and has determined that Plaintiff has again not sufficiently alleged facts to support his NIED and insurance fraud claims. While a *pro se* complaint should not be dismissed without leave to amend at least once, *see Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014), the Court has already afforded Plaintiff that opportunity. And because granting further leave to amend as to the NIED and insurance fraud claims would be futile for the reasons described in this order, Plaintiff's NIED and insurance fraud claims are dismissed without leave to amend. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)").

### V. SUBJECT MATTER JURISDICTION

In its review of the pleadings in this action, the Court has noticed a possible defect with respect to the exercise of diversity jurisdiction. Specifically, Plaintiff is a citizen of Connecticut for diversity jurisdiction purposes, and he initially pleaded that Defendant Orengo, too, was a Connecticut citizen. *See* Compl., ECF No. 1, ¶ 3. Diversity of citizenship is determined at the time the initial complaint is filed. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004); *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 53 (2d Cir. 2019). Although Defendant Orengo later filed a disclosure statement stating that she is a citizen of

Massachusetts, *see* Orengo Disclosure St., ECF No. 19, and Plaintiff's SAC identifies Orengo as a "citizen of Massachusetts who presently resides" in Connecticut, ECF No. 166 at 1, the Court wishes to ensure itself that complete diversity exists between the remaining parties.[4] "An individual's citizenship, within the meaning of the diversity statute, is determined by [her] domicile . . . [in other words] the place where a person has [her] true fixed home and principal establishment, and to which, whenever [s]he is absent, [s]he has the intention of returning." *Van Buskirk*, 935 F.3d at 53 (citation omitted).

Thus, by February 6, 2026, Defendant Orengo shall file a notice on the docket confirming her citizenship, based on her place of domicile at the commencement of this action. *See* Fed. R. Civ. P. 7.1(a)(2).

## VI. CONCLUSION

For the reasons detailed herein, Defendant Hanover's motion to dismiss all claims against it, ECF No. 168, is GRANTED, without leave to amend. The Clerk is directed to terminate Defendant Hanover from this action.

Defendant Orengo's motion to dismiss Counts Three and Four, ECF No. 172, is likewise GRANTED, without leave to amend.

---

[4] While Plaintiff cites to Chapters 20 and 93 of Title 15 of the U.S. Code as an alternative federal question basis for this Court's subject matter jurisdiction, *see* ECF No. 166 at 2, his "general references to Title 15 of the United States Code . . . are insufficient to invoke this Court's federal question jurisdiction." *King v. Sailormen, Inc.*, No. 6:19-CV-2232-Orl-78 (DCI), 2019 WL 12261702, at *2 (M.D. Fl. Dec. 30, 2019). Additionally, the Court has dismissed any purported federal insurance fraud claim. Thus, without an alternative federal question basis for jurisdiction over this action, the Court must be satisfied it has diversity jurisdiction over this action.

Defendant Orengo shall file the required notice with respect to her citizenship at the time the complaint was filed by February 6, 2026.

**SO ORDERED** at Hartford, Connecticut, this 30th day of January, 2026.

                                        */s/ Sarala V. Nagala*
                                        SARALA V. NAGALA
                                        UNITED STATES DISTRICT JUDGE